UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LORI MARTINETTI, as representative of her minor daughter, Jane Doe Martinetti,<br><br>               Plaintiff,<br><br>      v.<br><br>KELLY MULVOY MANGAN, in her representative capacity as President of Harrison Central School District Board; KIMBERLY BEUKEMA, in her representative capacity as Principal of Harrison High School; ROES AND DOES 1–X,<br><br>               Defendants. | No. 17-CV-5484 (KMK)<br><br>OPINION & ORDER |

Appearances:

Warren Ross Markowitz, Esq.
The Markowitz Law Firm
Las Vegas, NV
*Counsel for Plaintiff*

Lewis R. Silverman, Esq.
Stephen Paul Illions, Esq.
Caroline Beth Lineen, Esq.
Silverman and Associates
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Lori Martinetti, as representative of her minor daughter, Jane Doe Martinetti ("Plaintiff"),

brings this Action under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C.

§§ 1681 *et seq*., and the Fifth and Fourteenth Amendments of the United States Constitution,

U.S. Const. amend. V, XIV, against Kelly Mulvoy Mangan ("Mangan"), in her representative

capacity as President of Harrison Central School District Board (the "School Board"), and

Kimberly Beukema ("Beukema"), in her representative capacity as Principal of Harrison High

School (collectively, "Defendants"). (*See generally* Am. Compl. (Dkt. No. 19).)[1] Plaintiff alleges that Defendants violated her rights when they failed to "investigate and take corrective and protective action" after learning that Plaintiff was sexually assaulted. (Am. Compl. ¶ 5.) Before the Court is Defendants' Motion To Dismiss (the "Motion"). (*See* Not. of Mot. (Dkt. No. 33).) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Am. Compl.), and are taken as true for the purpose of resolving the instant Motion.

Until relocating to Las Vegas, Nevada in August 2016, Plaintiff resided in the Harrison Central School District (the "School District") and attended Harrison High School ("HHS"). (Am. Compl. ¶ 15.) On November 18, 2015, Plaintiff "notified members of the HHS administration that she had been the victim of a sexual assault" by "a person known to her, her school classmates[,] and the school community in general." (*Id.* ¶ 27.) Upon learning of the sexual assault, "the members of HHS, under the direction of the School Board, and therefore [Defendants] . . . , did ignore their responsibilities, failed to conduct an investigation, create or develop a plan to address the assault, [or] provide a protective environment to the victim, and passed their non-delegable duty under the law[] to the School Resource Officer, a member of the [Harrison Police Department]." (*Id.* ¶ 28.) Defendants allegedly "shuffl[ed] [Plaintiff] from service provider to service provider" in order to "prevent any perceivable impediment to the standing of the School, the District, and the Community." (*Id.* ¶¶ 5–6.) The School Resource

---

[1] Plaintiff also names "Roes and Does 1–X" as defendants in this Action, but makes no allegations against any Roe or Doe Defendants in the body of the Amended Complaint.

Officer ("SRO"), who was tasked with addressing the incident, "appeared to lack any kn[ow]ledge of how to deal with sexual altercations involving minors"; he "subject[ed] the Plaintiff to Miranda Warning prior to taking a statement, which resulted [in] the exer[c]ise of undue influence over [Plaintiff] and squelched her ability to gain the protections of state and Federal Law within an educational setting." (*Id.* ¶ 7.) Under the "direct oversight and control of the Chief of Police," Defendants allegedly "conspire[d] to 'play down' or otherwise 'sweep under the rug' any matters that would negate the value of the local community," thereby "establish[ing] a general understanding and policy of 'it doesn't happen here.'" (*Id.* ¶ 8.)

As a result of these events, Plaintiff "found it necessary to visit with . . . a variety of mental health professionals," including school therapists and private mental health service providers. (*Id.* ¶ 30.) Plaintiff alleges that she was "denied the protections of the law, the safety of the law, and was subject to ridicule and persecution by her classmates because of the outcry and disclosure of the assault." (*Id.* ¶ 45.) Plaintiff seeks compensatory damages "and any other relief that this [C]ourt determines to be just and proper." (*Id.* at 11, ¶ 47.)

B. Procedural Background

Plaintiff filed her original complaint in state court on June 9, 2017, bringing claims against Mangan and Beukema, as well as against Michael Olsey ("Olsey"), Chief of Police of Harrison, New York, and Defendants removed the Action to this Court on July 19, 2017. (Not. of Removal (Dkt. No. 1).) On July 21, 2017, Olsey filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss, and Beukema and Mangan filed a pre-motion letter similarly seeking to move to dismiss on July 28, 2017. (Dkt. Nos. 8, 10.) The Court held a pre-motion conference on October 10, 2017, during which the Court directed

Plaintiff to file an amended complaint within 30 days curing the defects raised by Defendants' letters.  (*See* Dkt. (minute entry for Oct. 10, 2017).)

On November 10, 2017, Plaintiff filed the operative Amended Complaint.  (Am. Compl.)  On November 13, 2017, Olsey filed a letter seeking a pre-motion conference in anticipation of moving to dismiss the Amended Complaint, and on November 22, 2017, Beukema and Mangan also filed a letter seeking to file a motion to dismiss.  (Dkt. Nos. 20, 22.)  On November 30, 2017, Olsey was voluntarily dismissed from the Action without prejudice.  (*See* Not. of Voluntary Dismissal (Dkt. No. 25).)  The Court then held a pre-motion conference, and set a briefing schedule for Beukema's and Mangan's contemplated motion to dismiss.  (*See* Dkt. (minute entry for Feb. 5, 2018).)

Defendants filed the instant Motion To Dismiss and accompanying papers on March 12, 2018.  (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 35).)  On April 13, 2018, Plaintiff filed a response.  (*See* Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 37).)  On May 21, 2018, Defendants filed a reply.  (*See* Defs.' Reply Mem. of Law in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 38).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.

2012)).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to

facts stated on the face of the complaint, in documents appended to the complaint or incorporated

in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F.*

*v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation

omitted).

### B.  Analysis

Defendants move to dismiss the Amended Complaint on grounds that Plaintiff has failed

to state a claim.  (*See* Defs.' Mem 4–13.)

#### 1.  Title IX[2]

Defendants argue that Plaintiff fails to state a claim under Title IX because (1) the named

Defendants are not recipients of federal funds as is necessary to be liable for violations of Title

IX; (2) Plaintiff fails to allege that Defendants had actual notice of the sexual assault;

(3) Plaintiff fails to plead deliberate indifference; (4) Plaintiff fails to plead gender-based

discrimination; and (5) Plaintiff fails to plead the deprivation of educational opportunities.

(Defs.' Mem. 4–9.)  Defendants also argue that to the extent Plaintiff "seeks to assert that the . . .

[D]efendants' failure to establish a grievance procedure for sexual assault constitutes

discrimination under Title IX, this assertion is false."  (*Id.* at 12.)

##### a.  Applicable Law

"Title IX provides in pertinent part: 'No person shall, on the basis of sex, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination under any

---

[2] Plaintiff's first cause of action is entitled "Violation of Rights and Protections Under Title IX," while Plaintiff's second cause of action is entitled "Failure to Provide the Protections and Services Required Under Federal Statute," and references Title IX within the text of the cause of action.  (Am. Compl. 5, 7, ¶ 34.)  The Court will treat both causes of action as intending to assert claims under Title IX.

education program or activity receiving Federal financial assistance.'" *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280 (1998) (quoting 20 U.S.C. § 1681(a)). "Title IX allows a student to assert a private cause of action against the recipient of the federal funding for the denial of access to education." *Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) (citation omitted).

A plaintiff may seek private damages against a school receiving federal funding in cases of student-on-student sexual misconduct where the school "acts with deliberate indifference to known acts" of misconduct that are "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). "For an educational facility to be liable, however, the plaintiff must establish that a school official with 'authority to address the alleged discrimination and to institute corrective measures' had 'actual knowledge' of the discrimination and failed to adequately respond." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (quoting *Gebser*, 524 U.S. at 280). Additionally, a federal funding recipient may only be held liable under Title IX "where the funding recipient acts with deliberate indifference to known acts of [misconduct] in its programs or activities." *Davis*, 526 U.S. at 633; *see also McGrath v. Dominican Coll.*, 672 F. Supp. 2d 477, 486 (S.D.N.Y. 2009) ("[A] plaintiff may recover [under Title IX] . . . if the plaintiff can demonstrate . . . (1) [the] defendant is a Title IX funding recipient; (2) an appropriate person has actual knowledge of the discrimination or harassment the plaintiff alleges occurred; (3) the funding recipient has acted with deliberate indifference . . . ; and (4) the discrimination is so severe, pervasive[,] and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."). "Courts will find deliberate indifference where a plaintiff demonstrates

that the school's response to the [misconduct] or its lack of response is 'clearly unreasonable in light of the known circumstances.'" *McGrath*, 672 F. Supp. 2d at 486–87 (quoting *Davis*, 526 U.S. at 648).

### b. Application

Plaintiff has named as Defendants Mangan, the President of the School Board, and Beukema, the principal of HHS, rather than HHS itself, the School Board, or the District. Plaintiff, citing no caselaw or statute, argues that "[a] school district is an agency that may only be sued through its officers, representatives, managers, etc." (Pl.'s Mem. 3.) However, the Supreme Court has made clear that "Title IX reaches institutions and programs that receive federal funds" but "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). "Numerous district courts in the Second Circuit . . . have held that there is no individual liability under Title IX." *Miotto*, 534 F. Supp. 2d at 426 (collecting cases). The Court can find no case in support of Plaintiff's contention that a school district cannot be a named defendant in a Title IX action, and, indeed, numerous cases expressly hold that "only the institutional recipient of federal funds can be held liable under Title IX." *Tesoriero v. Syosset Centr. Sch. Dist.*, 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005) (citation omitted); *see also Welcome v. N.Y.C. Dep't of Educ.*, No. 17-CV-5407, 2018 WL 5817156, at *4 (E.D.N.Y. Nov. 6, 2018) (dismissing Title IX claim brought against school principal "in both her individual *and official capacity*" because a school principal "cannot be held individually liable under Title [IX] because Title [IX] does not provide for individual liability" (emphasis added)); *Zamora v. N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 423 (S.D.N.Y. 2006) (dismissing Title IX claims against individual defendants because "[the] [p]laintiffs may state a claim under Title IX only

against the District itself, as an institutional recipient of federal funds"); *Kraft v. Yeshiva Univ.*, No. 00-CV-4899, 2001 WL 1191003, at *5 (S.D.N.Y. Oct. 5, 2001) ("The overwhelming weight of authority holds that Title IX causes of action may not be successfully asserted . . . against individual faculty members or other employees of the recipient."); *Manfredi v. Mount Vernon Bd. of Educ.*, 94 F. Supp. 2d 447, 456 (S.D.N.Y. 2000) ("The Supreme Court's decision in *Davis* extended liability for peer-on-peer sexual harassment under Title IX to the institutional aid recipient, not to the employees of the recipient.").  Plaintiff's Title IX claims against Defendants fail on this basis alone.

However, even if Plaintiff had appropriately named the School District as a defendant, Plaintiff has failed to state a claim under Title IX because Plaintiff has not alleged facts to support an inference that she suffered from discrimination that was so "severe, pervasive, and objectively offensive" that she was deprived of an educational opportunity, *Davis*, 526 U.S. at 633, or that the School District acted with "deliberate indifference" upon learning of Plaintiff's alleged assault, *id*.  First, Plaintiff pleads virtually no facts about the assault in question, including where and when it was perpetrated, the attack's severity, and whether the alleged perpetrator was a student, teacher, or other member of the school community.  The Court is unable to find any case in which a Title IX claim has survived a motion to dismiss without pleading a single fact about the nature of the alleged sexual misconduct.  On the contrary, courts analyzing Title IX claims routinely assess the specific circumstances of the alleged sexual harassment or assault in determining whether a funding recipient's response was clearly unreasonable, and whether the misconduct was sufficiently pervasive and severe to support a claim.  *See, e.g.*, *Welcome*, 2018 WL 5817156, at *7 (finding the assaults endured by the plaintiff "sufficiently severe, pervasive, and objectively offensive" under Title IX where "the facts

alleged in [the] [p]laintiff's amended complaint," which included detailed allegations about two incidents of sexual violence and harassment, "are sufficiently severe such that they would rise to the level of denying [the plaintiff] equal access to an educational program"); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 610 (W.D. Tex. 2017) (denying motion to dismiss Title IX claim where the plaintiff alleged she was sexually assaulted at an off-campus party, identified the assailant as another student, and included extensive allegations about prior instances in which the university improperly responded to similar reports of sexual assault); *Tubbs v. Stony Brook Univ.*, No. 15-CV-0517, 2016 WL 8650463, at *1 (S.D.N.Y. Mar. 4, 2016) (denying motion to dismiss where the plaintiff specifically alleged "violent[] and forced sexual contact" after withdrawing consent to sexual activity, identified the assailant and the date of the attack, alleged that a subsequent examination showed the attack "caused significant bruising," and cited prior instances of reported sexual assaults that the school failed to properly address); *Rex v. W. Va. Sch. of Osteopathic Med.*, 119 F. Supp. 3d 542, 550–51 (S.D. W.Va. 2015) (denying motion to dismiss Title IX claim of student where the complaint alleged that "a fellow student . . . drugged and raped her after she had been drinking at an off-campus party" on a specific date). Because Plaintiff asserts no facts about the assault itself, there is no way to determine whether the single alleged assault constitutes plausible misconduct "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. Indeed, a single instance of sexual harassment is typically insufficient to establish liability under Title IX unless "the conduct consists of extreme sexual assault or rape." *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (holding that one incident of inappropriate sexual touching was not sufficiently severe to state a claim under Title IX); *see also Brodsky ex rel. S.B. v. Trumbull Bd. of Educ.*, No. 06-CV-1947, 2009 WL 230708,

at *6 (D. Conn. Jan. 30, 2009) (finding that one incident of male student touching a female student's breasts and buttocks, and other incidents of name-calling, insults, and physical harassment, were "not sufficiently pervasive or severe from an objective standpoint"); *Soriano ex rel. Garcia v. Bd. of Educ. of City of N.Y.*, No. 01-CV-4961, 2004 WL 2397610, at *6 (E.D.N.Y. Oct. 27, 2004) (finding two separate incidents in which two male students inappropriately touched a female student not sufficiently pervasive under Title IX); *cf. Kelly v. Yale Univ.*, No. 01-CV-1591, 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003) ("There is no question that a rape . . . constitutes severe and objectively offensive sexual harassment under the standard set forth in *Davis*."). Although Plaintiff alleges a sexual assault, she has pled no facts explaining what exactly occurred, preventing the Court from determining whether the alleged assault was the type of attack that is sufficiently serious to state a claim under Title IX.

Regarding the School District's response, Plaintiff alleges that upon learning of the alleged assault, "members of HHS" referred the issue to the SRO, who is an officer of the Harrison Police Department, and that he "failed to fulfill his respective obligations and investigate the matter alleged, and provide any conclusion as to the facts provided by [Plaintiff]." (Am. Compl. ¶ 28.) However, Plaintiff also makes allegations suggesting that the SRO did perform some form of investigation, including taking a sworn statement from Plaintiff, but that during that investigation Plaintiff was "treat[ed] . . . as a suspect in the commission of a crime and not as a victim of a crime." (*Id.* ¶¶ 7, 43.) Plaintiff also asserts in her memorandum that there was an investigation, but that it was "the result of a predetermined course of action, a desired goal to undermine the circumstances of sexual assault among teens." (Pl.'s Mem. 4.)

Plaintiff appears to suggest that the School District's referring the issue to law enforcement, rather than performing its own investigation, was tantamount to "sweeping the

matter under the rug," (*see* Am. Compl. ¶ 29), and that any investigation that was conducted was done improperly.[3]  Even if Plaintiff believes a different type of investigation, or a more expansive one, was the appropriate response, school districts are "not required to proceed in any particular manner, even if . . . there was a school district policy in place that required the initiation of a formal investigation."  *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, No. 12-CV-2200, 2013 WL 177911, at *7 (S.D.N.Y. Jan. 16, 2013) (citing *Gebser*, 524 U.S. at 292), *aff'd*, 531 F. App'x 132 (2d Cir. 2013); *see also Davis*, 526 U.S. at 648 ("[V]ictims of peer harassment [do not] have a Title IX right to make particular remedial demands."); *Soriano*, 2004 WL 2397610, at *4 ("While [the] plaintiffs may have preferred a different response from the school administrators, the standard is not whether the administrators responded in a particular manner, but whether their response was clearly unreasonable in light of all the known circumstances.").

To the extent Plaintiff argues that the investigation was deficient, Plaintiff has alleged so few facts that it is not possible to discern precisely what form of investigation Plaintiff believes the school undertook, and why it was clearly unreasonable.  Plaintiff alleges that the administration of HHS "ignore[d] [her] pleas for help," that it "conspire[d] to 'play down' or 'otherwise sweep under the rug'" Plaintiff's sexual assault, that there was a "lack of corrective, or preventive action," and that HHS "failed to conduct an investigation, . . . create or develop a plan to address the assault, [or] provide a protective environment to the victim."  (Am. Compl. ¶¶ 4, 8, 9, 28.)  However, Plaintiff also alleges that the school "passed" the matter to the SRO,

---

[3] The Court notes that Plaintiff has not fully explained the relationship between the SRO and the school.  It is therefore unclear whether Plaintiff is alleging that the school performed no investigation and deferred solely to law enforcement, or that it performed an investigation through the SRO that was deficient.

who was a law enforcement officer and took a statement from Plaintiff, and that the school

referred Plaintiff to unspecified "service provider[s]." (*Id.* ¶¶ 5, 28.) Plaintiff asserts that the

SRO had a "lack of knowledge, training, existing departmental policies, and or procedures" with

respect to investigating sexual assault allegations, (*id.* ¶ 28), but provides no specifics about the

way he conducted the investigation, such as alleging that he never interviewed the assailant or

other witnesses, or that he drew conclusions based on improper considerations, that could

demonstrate the response was not only insufficient but clearly unreasonable. The dearth of such

allegations prevents Plaintiff from stating a plausible claim. *See Welcome*, 2018 WL 5817156, at

*7 (finding a school did not act with deliberate indifference to the plaintiff's reported sexual

assaults where the complaint alleged the school "contacted the police" the day after it learned of

the assaults and told the plaintiff it was "further investigating the incident," as these facts

demonstrate the school "acted expeditiously and reasonably," and the school was "not required

to respond precisely as [the] [p]laintiff would have preferred" (quotation marks omitted)).

Finally, although Plaintiff alleges that the SRO did not "provide any conclusion as to the facts

provided," Plaintiff argues in her memorandum that there was indeed some outcome of the

investigation, but that it "was the result of a predetermined course of action." (Pl.'s Mem. 4.) In

any event, Plaintiff nowhere explains what the outcome of that investigation was, but only that

she is clearly dissatisfied with it.

Moreover, without alleging whether the perpetrator was a member of the school

community, the Court cannot judge whether the referral to law enforcement was "clearly

unreasonable"; if the assault took place away from school grounds and was perpetrated by

someone who, while "known to" the school, (*id.* ¶ 2), was not a member of the school

community, the police department may be the only entity with the ability to conduct an effective

investigation, as the School District may have no access to the perpetrator or ability to prevent

Plaintiff from encountering the perpetrator in the future. If so, relying on law enforcement may

be clearly reasonable. *See Davis*, 526 U.S. at 645 (noting that "the [misconduct] must take place

in a context subject to the school district's control"); *Tyrrell v. Seaford Union Free Sch. Dist.*,

792 F. Supp. 2d 601, 629 (E.D.N.Y. 2011) (holding the plaintiff could not base a Title IX claim

on an incident of sexual assault by someone who "was not a student" of the defendant and that

occurred "off school grounds" because the defendants "did not . . . have control over either the

alleged assailant or the context in which the conduct occurred"); *T.Z. v. City of New York*, 634 F.

Supp. 2d 263, 268 (E.D.N.Y. 2009) ("A plaintiff seeking recovery for a violation of Title IX

based on student-on-student harassment must prove that the alleged harassment took place in a

location within the control of a recipient of federal funds." (citing *Davis*, 526 U.S. at 645)).[4]

Although Plaintiff asserts in her memorandum that "the assailant and the circumstances under

which the assault occurred [were] under the review and or control of Harrison High School, and

subject to the rules, regulations, and behavioral codes of the Harrison School District," and

implies that the perpetrator was another student or possibly a school employee by saying that

Plaintiff and the assailant "were in regular contact during school days, traversed the same school

halls, and were allowed to remain in contact with and available to each other after the assault was

reported," no such allegations appear in the Amended Complaint. (Pl.'s Mem. 4–5.) As such,

the claims cannot defeat Defendants' Motion To Dismiss. *See Bernstein v. City of New York*,

No. 06-CV-895, 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007) ("[N]ew claims not

---

[4] Plaintiff alleges that the SRO read Plaintiff a "Miranda Warning" and took a statement, which Plaintiff claims resulted in the exercise of "undue influence" over her and "squelched her ability to gain the protections of state and Federal Law within an educational setting." (Am. Compl. ¶ 7.) It is not clear why having police take a witness statement "squelche[s]" Plaintiff's ability to seek legal redress.

specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss." (citation omitted)); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in [a] plaintiff['s] opposition papers"). Even were the Court to consider the allegations in Plaintiff's memorandum, Plaintiff still fails to include any details about the assault or the assailant beyond her own conclusion that they were "under the review and or control of Harrison High School, and subject to the rules, regulations, and behavioral codes of the Harrison School District." (Pl.'s Mem. 4.)

Plaintiff also alleges that she was "shuffle[d] . . . from service provider to service provider," which "effectively eliminated the apparent responsibility of the High School Administration to investigate and take corrective and protective action." (Am. Compl. ¶ 5.) Without any indication of what sort of "service provider[s]" Plaintiff was referred to, and whether Plaintiff sought and was denied other forms of assistance or accommodation, Plaintiff has not pled sufficient facts to support the inference that the school's response was "clearly unreasonable." *McGrath*, 672 F. Supp. 2d at 486–87. Referrals to appropriate service providers can be part of a perfectly reasonable response to a report of sexual misconduct. *See KF ex rel. CF*, 2013 WL 177911, at *6–7 (holding that the defendants were not deliberately indifferent after the plaintiff reported two sexual assaults where the defendants, inter alia, referred her to a psychiatrist, an out-of-district academic program, a home instruction program, and private tutoring). Moreover, the Amended Complaint points to no specific accommodation, service, or form of investigation that Plaintiff sought but was denied, thus dooming her claim. *See Roskin-Frazee v. Columbia Univ.*, No. 17-CV-2032, 2018 WL 6523721, at *11–12 (S.D.N.Y. Nov. 26, 2018) (holding the defendant did not act with deliberate indifference where it did not conduct

interviews pursuant to its investigation, because "the complaint does [not] allege that [the plaintiff] identified certain individuals . . . whom [the] [d]efendant . . . failed to interview," and "the complaint does [not] . . . identify an . . . accommodation [the plaintiff] sought that she did not receive").

Finally, to the extent that Plaintiff asserts a Title IX claim based on the School District's failure to establish an appropriate grievance procedure for reports of sexual assault, the Court agrees with Defendants that "the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX." *Gebser*, 524 U.S. at 292; *see also KF ex rel. CF*, 2013 WL 177911, at *7 (finding that the defendant school district "was not required to proceed in any particular manner, even if . . . there was a school district policy in place that required the initiation of a formal investigation; rather, liability will attach only if [the] [d]efendants acted in a manner that was clearly unreasonable (citing *Gebser*, 524 U.S. at 292)); *cf. McGrath*, 672 F. Supp. 2d at 489 (distinguishing *Gebser* and denying motion to dismiss where the plaintiff "alleged far more than a failure to promulgate procedures," and instead "sets forth in detail the [defendant school's] actual knowledge and deliberate indifference"). Any claim based solely on the School District's failure to implement appropriate grievance procedures for reports of sexual assault therefore fails.

For these reasons, Plaintiff's Title IX claims are dismissed.

### 2. Constitutional Claims Under Section 1983

Plaintiff alleges that Defendants violated her constitutional right to due process under the Fifth and Fourteenth Amendments of the United States Constitution. As employees of the Harrison school district, Plaintiff may bring constitutional claims against Defendants under 42 U.S.C. § 1983. "School districts and boards of education are considered municipal entities that

can be sued under § 1983." *Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594, 2018 WL 2100605, at *16 (W.D.N.Y. May 7, 2018); *see also Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 534 (S.D.N.Y. 2013) (noting that "[a]lthough [the plaintiff] does not expressly refer to 42 U.S.C. § 1983 . . . in his Complaint, that is the proper statutory vehicle by which [the] plaintiff could bring" constitutional claims against a community college (citation and quotation marks omitted)); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 316 (S.D.N.Y. 2007) (explaining that "[a] proper statutory vehicle by which [the] plaintiff could bring" due process and equal protection claims against a public university and its employees "is a [§] 1983 claim").

It is not entirely clear from the Amended Complaint whether Plaintiff seeks to assert a procedural or a substantive due process claim, or both. Plaintiff's memorandum makes no argument in support of her constitutional claims, and states only that the "substantive due process claims, procedural claims, and associated state law claims under the NYS Constitution and the Educational law may be substantiated in the event the [C]ourt allows the use of discovery to address the procedural and substantive policies of the District Defendants." (Pl.'s Mem. 6.)[5]

"[T]o present a due process claim, a plaintiff must establish (1) that [s]he possessed a liberty interest and (2) that the defendant(s) deprived h[er] of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation omitted). Courts have recognized that a plaintiff "may have a cognizable property interest in a free and appropriate public education ('FAPE')." *Tyrrell*, 792 F. Supp. 2d at 630. However, Plaintiff has not pled facts that demonstrate she was "deprived in some manner of [her] property interest in a

_____

[5] The Amended Complaint does not reference any state law claims or claims under the New York State Constitution or the "Educational Law," except to the extent Plaintiff is referring to her Title IX claims.

FAPE by Defendants' conduct." *Id.* (alteration omitted) (quoting *Smith v. Guilford Bd. Of Educ.*, 226 F. App'x 58, 63 (2d Cir. 2007)); *see also D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-CV-4546, 2017 WL 3017189, at *8 (E.D.N.Y. July 11, 2017) ("[A] student's procedural due process rights with respect to his or her education only arise where the student is excluded from the entire educational process." (citation omitted)).[6]

The Amended Complaint alleges that Plaintiff "found it necessary to visit with . . . a variety of mental health professionals," including school therapists and private mental health service providers. (Am. Compl. ¶ 30.) Plaintiff further alleges that she was "denied the protections of the law, the safety of the law, and was subject to ridicule and persecution by her classmates because of the outcry and disclosure of the assault." (*Id.* ¶ 45.) Nowhere in the Amended Complaint does Plaintiff allege that the School District's response to her assault negatively impacted her educational opportunities. Plaintiff asserts for the first time in her memorandum, and only in connection with her Title IX claim, that she "was forced to relocate herself," resulting in a "substantial change in educational opportunities, environment, school district advantages, and social implications," which she argues "constitutes a deprivation of educational opportunities." (Pl.'s Mem. 5.) However, even assuming arguendo that this constitutes "exclu[sion] from the entire educational process," *D.C. by Conley*, 2017 WL 3017189, at *8, this allegation does not appear in the Amended Complaint, and as already

---

[6] The Second Circuit has held that "the right to public education is not fundamental," and that there is therefore "no substantive due process right to public education." *Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (citations omitted). Therefore, to the extent Plaintiff's due process claims rely on deprivation of a free and appropriate public education, Plaintiff is limited to asserting a procedural due process claim. *See D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-CV-4546S, 2017 WL 3017189, at *8 (E.D.N.Y. July 11, 2017) ("Although there is no substantive due process right to a public education, the property right granted to [the] [p]laintiff as a public school student under New York law is a sufficient interest for a procedural Due Process claim." (citation and quotation marks omitted)).

discussed, "[a] complaint cannot be amended merely by raising new facts and theories in [a] plaintiff['s] opposition papers," *Southwick Clothing*, 2004 WL 2914093, at *6.

In any event, Plaintiff's constitutional claims against Defendants in their official capacity fail because even if Plaintiff had properly alleged a constitutional deprivation, she has failed to sufficiently allege a municipal policy or custom that caused the deprivation.  Plaintiff sues Defendants Mangan and Beukema solely in their "representative capacit[ies]" as President of the School Board and Principal of HHS, respectively.  (*See* Am. Compl. (case caption).)  Where a plaintiff brings constitutional claims against a municipal actor in her official capacity, the plaintiff must satisfy the requirements of *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978).  That is, the plaintiff must "plead the existence of a municipal custom, policy, or practice which caused the deprivation of her constitutional rights."  *Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 243 (S.D.N.Y. 2013); *see also Dole v. Huntington Union Free Sch. Dist.*, 699 F. App'x 85, 87 (2d Cir. 2017) ("A school district is a municipal entity, and as such, cannot be held liable pursuant to § 1983 solely because of the discriminatory actions of one of its employees. . . .  A school district can only be held liable if its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." (citation, quotation marks, and alterations omitted)); *E. Irondequoit Cent. Sch. Dist.*, 2018 WL 2100605, at *10 (noting that claims against individual defendants "in their official capacities are duplicative of the claims against the School District"); *Castanza v. Town of Brookhaven*, 700 F. Supp.2d 277, 283–84 (E.D.N.Y. 2010) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (quoting *Monell*, 436 U.S. at 691)).

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff also must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 ("The fact that a municipal 'policy' might lead to '[official] misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between . . . [the] inadequacies alleged, and the particular constitutional violation at issue."); *see*

*also Simms v. City of New York*, 480 F. App'x 627, 629 (2d Cir. 2012) ("[T]he plaintiff must 'demonstrate that, through its deliberate conduct, the municipality itself was the moving force behind the alleged injury.'" (alterations omitted) (quoting *City of Waterbury*, 542 F.3d at 37)).

The Amended Complaint alleges that HHS "fail[ed] to have policies and procedures in place, and to properly train and advise its employees, of the goals and expectations in dealing with matters of sexual assault," and that HHS violated "Plaintiff's rights under the United States Constitution . . . through willful act or through the absence of effective and required . . . policies to address the assault complained of." (Am. Compl. ¶¶ 3–4.) Plaintiff also alleges that the SRO's investigation was deficient due to his "lack of knowledge, training, existing departmental policies, and or procedures." Plaintiff further includes allegations that the Harrison Police Department officers "were not sufficiently trained in handling sexual assault matters nor were they provided guidance as to outside resources or services available to victims of such experiences." (*Id.* ¶ 43.)

The only means of establishing a policy or custom that Plaintiff arguably asserts is a failure to train employees in how to properly handle student reports of sexual assault. "A school district may be held liable for inadequate training, supervision or hiring where the failure to train, hire or supervise amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 06-CV-15509, 2011 WL 1079944, at *8 (S.D.N.Y. Mar. 24, 2011) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Under this theory, "[P]laintiff bears the burden of establishing: (1) that a final policymaker for [HHS] was deliberately indifferent to the need to train" employees in the treatment of reports of sexual assault; and "(2) that the lack of training actually caused the alleged due process violation." *Tyrrell*, 792 F. Supp. 2d at 631 (citing *Connick v. Thompson*, 563

U.S. 51, 60 (2011)). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 60 (citation and quotation marks omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *RF v. S. Country Cent. Sch. Dist.*, No. 13-CV-2710, 2016 WL 5349782, at *12 (E.D.N.Y. Sept. 23, 2016) (quoting *Connick*, 563 U.S. at 61).

Plaintiff has not alleged the involvement or awareness of any policymaker in the conduct underlying the Amended Complaint. Although she alleges that Defendants are policymakers, (*see* Am. Compl. ¶¶ 17–18), she pleads no facts suggesting that they were aware of any alleged training deficiencies. *See Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) (granting summary judgment based on failure to train where the plaintiffs had not "advanced any theory as to how a training deficiency caused the police officers to" violate their constitutional rights); *Tyrrell*, 792 F. Supp. 2d at 631–32 (finding the defendant was not deliberately indifferent where there was no evidence "that a final policymaker of the [school defendant] had notice" of the harassing conduct, "that its training of its employees . . . was deficient in any way," or that there was "a pattern of similar constitutional violations"). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation marks omitted); *see also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("To prove . . . deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious. An obvious need

may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." (citing, inter alia, *Harris*, 489 U.S. at 390)).

Here, Plaintiff does not allege that any prior investigations were unreasonably performed, nor has Plaintiff identified any policymakers who were involved in the investigation of Plaintiff's reported assault, or who had witnessed or were aware of anything that would put them on notice that HHS had insufficient policies or training in place to address incidents of student-on-student sexual assault; Plaintiff merely makes conclusory assertions that School District employees were improperly trained to handle sexual assault allegations. *See Shaheed v. City of New York*, No. 14-CV-7424, 2017 WL 3055040, at *8 (S.D.N.Y. July 17, 2017) (granting motion to dismiss where the amended complaint "makes no concrete allegations as to the deliberate indifference of any policymaking official"); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept. 28, 2011) (noting that a plaintiff must "provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train"), *aff'd*, 480 F. App'x 627 (2d Cir. 2012); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language—that the [c]ity failed to adequately train, discipline, and supervise employees and failed to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior of its employees—is insufficient to raise an inference of the existence of a custom or policy." (citation, alterations, and quotation marks omitted)). Plaintiff's general allegations that the School District failed to train employees or have sufficient policies and procedures in place based on a single alleged incident of failure to properly respond to a

report of sexual assault, without identifying anything that would have put policymakers on notice that employees were not sufficiently trained to handle such reports, are insufficient to establish municipal liability. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (citation and alteration omitted)); *Sarus v. Rotundo*, 831 F.2d 397, 402–03 (2d Cir. 1987) ("[I]n the absence of other evidence, mere proof of a single incident of errant behavior is an insufficient basis for finding that a municipal policy caused [the] plaintiff's injury."); *Molina v. City of Elmira*, No. 12-CV-6310, 2015 WL 1643280, at *7 (W.D.N.Y. Apr. 13, 2015) ("[T]he alleged failure to investigate the incident at issue—standing alone—cannot create a basis for municipal liability."); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) (noting that normally "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (citation, alteration, and quotation marks omitted)); *Powell v. Murphy*, 972 F. Supp. 2d 335, 345 (E.D.N.Y. 2013) ("[A] plaintiff cannot establish a municipal policy or custom where . . . [the plaintiff] presents evidence concerning only a single event."), *aff'd*, 593 F. App'x 25 (2d Cir. 2014); *Romero v. City of New York*, 839 F. Supp. 2d 588, 619–20 (E.D.N.Y. 2012) (dismissing *Monell* claims where the "plaintiff's complaint merely makes legal allegations regarding the defendants' duties and liability, unsupported by any factual allegations," and the plaintiffs "fail[ed] to point to a single affirmative act in the record" demonstrating that the defendants caused a constitutional violation); *cf. Benacquista v. Spratt*, 217 F. Supp. 3d 588, 601 (N.D.N.Y. 2016) (finding a plaintiff sufficiently pled *Monell* liability where the defendant "failed to take any meaningful corrective or preventive action *despite being repeatedly warned* by various teachers,

administrators, and at least one parent over the course of the school year about [a school employee's] improper and increasingly sexualized misconduct" (emphasis added)); *McGrath*, 672 F. Supp. 2d at 491 (finding the plaintiff adequately alleged municipal liability where there were "allegations . . . that the College's administrators engaged in a *pattern* of conduct designed to effectively dispose of—rather than address—sexual harassment claims that were potentially embarrassing or harmful to the school" (emphasis added)).

Plaintiff argues that discovery is necessary to "address the procedural and substantive policies" of the School District; however, "while it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Stoeckley v. County of Nassau*, No. 15-CV-514, 2015 WL 8484431, at *2 (E.D.N.Y. Dec. 9, 2015) (alterations omitted). "To state a claim for municipal liability based on failure to train, [a] [p]laintiff . . . must allege facts that support an inference that the municipality failed to train its [employees], that it did so with deliberate indifference, and that the failure to train caused [the plaintiff's] constitutional injuries." *Tieman*, 2015 WL 1379652, at *22.

Plaintiff's constitutional claims against Defendants in their official capacities under 42 U.S.C. 1983 are therefore dismissed.[7]

---

[7] Although Plaintiff has not asserted claims against Defendants in their individual capacities, the Court notes that any such claims would fail because Plaintiff has not alleged the personal involvement of Defendants in any unconstitutional conduct. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). The Amended Complaint makes no allegations whatsoever with respect to Mangan and Beukema. Defendants' alleged supervisory status, without more, is insufficient to establish individual liability under § 1983. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (noting that personal involvement under § 1983 requires "a showing of more than the linkage in the . . . chain of command"); *Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept.

### III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted, and Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file a second amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, *(see* Dkt. No. 33).

SO ORDERED.

Dated: March 19, 2019
White Plains, New York

KENNETH M. KARAS
United States District Judge

---

1, 2015) ("Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." (citation and quotation marks omitted)).